UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                    CR. CASE NO. 07-20410

v.                                      PAUL D. BORMAN
                                       UNITED STATES DISTRICT JUDGE

MICHAEL SCHUTTPELZ,

        Defendant.
_____/

ORDER DENYING DEFENDANT SCHUTTPELZ'
MOTION TO SUPPRESS EVIDENCE

Defendant filed a Motion to Suppress Physical Evidence (Dkt. No. 77), seeking to exclude evidence seized after Mr. Schuttpelz' arrest based upon *Arizona v. Gant*, 129 S.Ct. 171 (2009), a Supreme Court search and seizure decision determined subsequent to the motion filing deadline. Because of this intervening significant Supreme Court decision, the Court will rule on Defendant's out-of-time Motion. The Court rejects other out-of-time motions filed by Defendant.

Hearings were held on the instant motion on December 15 and 17, 2009, and the Court authorized supplemental briefing by the parties after they reviewed their requested transcript of the December 15, 2009 testimonial hearing.

On December 17, 2009, the Court held a second hearing, to permit oral argument on the instant Motion.

Thereafter, the Court permitted the parties to supplement their initial briefing.

Having considered the testimony, evidence and argument presented at the hearings, and

the legal briefings, the Court DENIES Defendant's Motion to Suppress Physical Evidence.

HEARING TESTIMONY

FBI Special Agent Bryan Taube testified that he worked with Special Agent Jennie Emmons in the cyber squad known as C16 in 2007.

In May, 2007 Emmons told him about her chats with an individual who had sent her child pornography via the Internet, and who was "making arrangements to meet her and some fictitious children that she was supposedly the mother of for the purpose of engaging in sexual contact with those children." Transcript of December 15, 2009 hearing, Taube, p.9.

Taube testified that Emmons informed him that the online person was traveling to Michigan, and Taube was to become part of the arrest team.

The arrest occurred on June 1, 2007 at a Kmart parking lot in St. Clair Shores, Michigan, when Defendant Schuttpelz exited the tractor-trailer he was driving, allegedly to meet with the victim(s) and their mother based on the internet scenario.

Based on the information disclosed in the investigation regarding Defendant being an over-the-road trucker, the agents were expecting a semi tractor-trailer, which is precisely the type of vehicle in which Defendant Schuttpelz arrived.

Given the communications with Defendant by cell phone and email, the agents concluded that Defendant would posses a cell phone and a laptop computer:

> We thought there might be a laptop in the semi at the time of the arrest . . . .
> That was the conclusion I came to, and I would guess that other
> agents had also come to that conclusion.

TR. Taube p.11.

> We also thought there might be a cell phone.

*Id*. at 12.

Indeed Defendant's semi pulled into the parking lot. To avoid the hazard of Defendant having access to a firearm in the truck, the arrest team created an arrest plan that they would wait until he exited to arrest him. TR. p.12

When Defendant exited the semi, he matched the description the agents had. The agents arrested him, handcuffed him, and Special Agent Steve Benner, who had been briefed as part of the arrest team, searched the truck cab. TR. p.13-15.

At the time of the search, Defendant was seated handcuffed in an FBI car. Thus, this was not a search incident to the arrest.

Special Agent Taube testified that the agents searched the semi for officer safety and "to search it for evidence." TR. p.23. Taube testified that the search was incident to the arrest. TR. p.23.

Taube further testified that "at the time of the arrest we expected there to be a cell phone because he had been making cell phone calls to Special Agent Emmons while he was transferring up there." TR. p. 23. "So I expected there might be a laptop and a cell phone in the semi."

Agent Taube testified to what he meant by a search incident to arrest:

> We expected there to be evidence in the vehicle directly related to
> the reason why he was traveling to the meeting.

TR. pp. 25-26. Agent Taube testified that the information he had regarding a laptop related to a laptop used prior to the date of travel, and it was his speculation that a laptop would be in the truck at that time. TR. pp. 25-26.

Special Agent Taube further testified that Special Agent Emmons was talking to Defendant on his cell phone as he drove to Detroit, and she was updating agents about his

3

progress. TR. p. 30. Taube further testified that, apart from the June 1, 2007 phone conversation, he was aware that Emmons had chatted online with Defendant, and that Defendant had conversations and images being sent by Defendant to her over a computer. Further, Taube testified that at the pre-arrest debriefing, the background information discussed Defendant's use of a computer and a cellphone. TR. p. 32.

Special Agent Jennie Emmons testified to being assigned to investigate child exploitation crimes including creating online entities to identify persons "trading child pornography, seeking a child for a real life sexual encounter." Emmons TR. pp. 36-37.

In the instant case, Emmons created a profile page identifying herself as "lassy - shannon." TR. p. 38.

Emmons waited for people to contact her and on April 7, 2007, Defendant contacted her under the screen name cherryice2u. Defendant wanted to discuss the ages of her children, their sexual experience, and "how far I'd like them to be taken sexually." TR. p.39.

Emmons testified that Defendant identified himself as a truck driver. TR. p. 40. Thereafter 30-40 conversations took place between April 7th and May 31, 2007. TR. p. 40.

Emmons testified that she and Defendant communicated both over the internet and by telephone. TR. pp. 40-41.

Emmons testified that Defendant, using the "cherryice2u" screen name, stated that he drove a tractor-trailer and his screen name showed pictures of tractor-trailers. TR. p.43. Defendant provided Emmons with his telephone number, and she spoke with him on April 18th or 19th. TR. p. 43. Defendant also told Emmons that he had a Verizon Air Card that he was using and a laptop. TR. p. 44:

> The air card would allow him to use cell phone lanes to connect to the internet so he could communicate via laptop while he was on the road.

*Id*. at 44.

Emmons testified that her belief that Defendant was communicating with her from a truck was based on conversations via computer where Defendant described waiting for his truck to be loaded. TR. p. 45. Emmons also concluded that Defendant was communicating with her via computer while driving his truck. TR. p. 46.

Government Hearing Exhibits 1-15 were logs of instant message conversations with cherryice2u revealing the different states through which he was driving. TR. pp. 48-50.

Emmons also testified that the cherryice2u screen name was registered to Defendant.

Emmons testified that Defendant stated in their first telephone conversation that he had gone to jail for a sex offense; she confirmed this in the Iowa sex offender registry, which includes the individual's photo and his address. TR. p.52. The Iowa photo matched the photo forwarded to Emmons by cherryice2u. TR. p. 52. The cell phone Defendant used was registered to his mother Barbara Kamrandt. TR. p. 53.

Emmons also testified that she had received information from Linda Findlay, a Michigan Macomb County Sheriff's Deputy who had a similar website profile, that Defendant cherryice2u had communicated with her by computer regarding his coming to Michigan after a stop in Nebraska. TR. pp. 55-56.

Emmons had later conversations with Defendant by cell phone indicating he was driving to Michigan relating to conduct charged in the instant case. Thereafter, multiple telephone conversations between Defendant and Emmons took place as to a meeting place; the St. Clair Shores Kmart was decided as the location.

The arrest took place at the St. Clair Shores Kmart.

Emmons had sworn to a complaint regarding criminal enticement of a minor, and received an arrest warrant against Defendant prior to the arrest. TR. p. 70.

Finally Emmons testified that her understanding was that the search of Defendant's truck was incident to his arrest.  TR. p. 77.

DISCUSSION

Based upon the evidence before the Court, the Court concludes that there was probable cause to arrest Mr. Schuttpelz, and also probable cause to enter the truck cab and seize the cellphone and the computer, both of which were utilized in facilitating the crime charged in the complaint.

The Government stated that after Defendant's arrest, and the seizure of the cellphone and the computer from the truck, it secured a warrant to go into the computer, but did not secure a warrant to go into the phone: "The government photographed the phone and returned it to Mr. Schuttpelz."  Dec. 17 TR, AUSA Mulcahy, p.4.

The Court upholds the warrantless search of the truck cab because (1) there was probable cause to search that vehicle – probable cause to believe there would be evidence of various crimes in that truck, to wit, the cellphone and the computer used in the instant criminal case as developed by the testimony of Special Agents Taube and Emmons.  The prosecution well-connected the trail of evidence: Defendant's internet chats to his phone conversations to his driving his rig to St. Clair Shores, Michigan.

Clearly there was probable cause to believe that a cellphone and a laptop computer would be found in the cab of the tractor trailer.

The Court finds applicable the vehicle search exception to the warrant requirement to permit the post-arrest search of the truck cab.

*Arizona V. Gant*, 129 S.Ct. 1710 (2009) upheld *Thornton v. United States*, 541 U.S. 615 (2004) which permits a search for evidence of a crime:

> we also conclude that circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle.

*Gant* at 1714. The Court further explained:

> If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798, 820-821, authorizes a search of any area of the vehicle in which the evidence might be found.

*Gant* at 1721.

Both the cellphone and the laptop computer were properly seized: the cellphone identifies the person constantly calling Special Agent Emmons that day; the laptop relates to the online chats between Defendant and Special Agent Emmons regarding the on-line enticement under 18 U.S.C. § 2422(b).

The automobile exception to the search warrant requirement permits search of a vehicle if there is probable cause to believe it contains evidence of a crime. Here there was such probable cause as to the crime charged in the complaint – online enticement per 18 U.S.C. § 2422(b). As the Government noted in its Supplemental Brief at Page 8:

> the laptop and air card provide the means of interstate commerce by which Schuttpelz committed the crime. Moreover, the cellphone and travel documents would further show that Schuttpelz was in fact "cherryice2u" by showing phone

>   conversations and travel consistent with the chats. But that is not all. When Schuttpelz arrived in Michigan, agents had probable cause to believe he crossed state lines and traveled interstate for the purpose of having sex with a minor under 12, in violation of both 18 U.S.C. §2241(c) and 2423(b). Moreover, they had probable cause to believe that evidence supporting those charges – in the form of the laptop, cellphone, and travel documents would be found in the truck. Finally, because Agent Emmons knew from her conversations with fellow undercover officer Linda Findlay that cherryice2u had sent child pornography to Findlay via computer, and that Schuttpelz had his laptop with him, there was a fair probability that evidence of child pornography crimes would likewise be found in the truck.

The Court agrees. The search of the truck was lawful because there was probable cause to believe that evidence of criminal acts was present in the truck. Thus, the warrantless search of the truck was based upon probable cause, and proper under the vehicle exception to the warrant requirement.

Finally, the Government contends that even if there was not a basis to search under *Gant*, the Court notes that *Belton*, which permitted vehicle searches after arrest, not *Gant*, was the law of the land on June 1, 2007. Thus, the Government contends that the *United States v. Leon* 468 U.S. 897 (1984), good faith exception to the exclusionary rule applies here. The Court agrees.

Accordingly, the Court DENIES Defendant's Motion to Suppress Evidence.

SO ORDERED.

>                                         s/Paul D. Borman
>                                         PAUL D. BORMAN
>                                         UNITED STATES DISTRICT JUDGE

Dated: January 15, 2010

8

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 15, 2010.

                                                s/Denise Goodine
                                                Case Manager